# EXHIBIT A

**MASSOOD & BRONSNICK, LLC**
50 Packanack Lake Road East
Wayne, New Jersey 07470-6663
(973) 696-1900
Attorneys for: Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEUROSURGICAL SPINE SPECIALISTS OF NJ a/s/o A.S., | CIVIL ACTION NO.: 12-5210 |
| Plaintiffs(s), | |
| v. | **CIVIL ACTION** |
| QUALCARE INC.; ENGLEWOOD HOSPITAL; ABC CORP. (1-10) (Said names being fictitious and unknown entities), | **AMENDED COMPLAINT** |
| Defendant(s), | |

The Plaintiffs, Neurosurgical Spine Specialists of NJ a/s/o A.S., (collectively referred to as "Plaintiff") by way of Amended Complaint against Defendants say:

**THE PARTIES**

1.    Plaintiff, Neurosurgical Spine Specialists of NJ (hereinafter referred to as "Neurosurgical Specialists" or "Plaintiff") is a medical services practice specializing in spinal surgeon, having an office located at 975 Clifton Avenue, Clifton NJ 07013. Dr. John Cifelli is a spinal surgeon employed at Neurosurgical Specialists. Sarah Bodie, PA-C is a physician assistant who provides co-surgeon services at Neurosurgical Specialists. At all relevant times, the Plaintiff was an "out-of-network" medical practice that provided various surgical services to subscribers enrolled in the healthcare plans of Defendants.

Massood & Bronsnick, LLC
Attorneys at Law

2.    A.S. is a citizen of the United States residing in New Jersey and is a subscriber to a self-funded health insurance plan.

3.    Defendant QualCare, Inc. (hereinafter referred to as "QualCare") is an insurance company authorized to transact insurance business throughout the State of New Jersey, which actively solicits customers from New Jersey, and is headquartered at 30 Knightsbridge Road, Piscataway, NJ 08854.  QualCare is a managed care company consisting of several healthcare plans providing healthcare coverage and third party administration to its subscribers for both "in-plan" and "out-of-network" medical services.

4.    QualCare conducts business in every county in the State of New Jersey, including Passaic County, and venue was properly laid in Passaic County.

5.    Defendant Englewood Hospital (hereinafter referred to as "Hospital") is an acute care, community teaching hospital authorized to transact insurance business throughout the State of New Jersey, which actively solicits customers from New Jersey, and is located at 350 Engle Street, Englewood, NJ 07631.  Hospital is a managed care company consisting of several healthcare plans providing healthcare coverage and third party administration to its subscribers for both "in-plan" and "out-of-network" medical services.

6.    Hospital conducts business in every county in the State of New Jersey, including Passaic County, and venue was properly laid in Passaic County.

7.    The terms of QualCare/Hospital's insurance agreements or plans were controlled by the laws of the State of New Jersey and/or Regulations of the New Jersey Department of Banking and Insurance and by the Employee Retirement Income

Maxwood & Brunswick, LLC
Attorneys at Law

Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1101, et seq.

8.    Plaintiffs received a written Assignment of Benefits agreement from A.S., the aforementioned QualCare/Hospital subscriber, of her contractual rights under the policy of group health insurance issued by QualCare/Hospital. Thus, Plaintiff has standing to bring a civil action against QualCare/Hospital. Plaintiffs make specific reference to the Assignment of Benefits as if set forth at length herein. Specifically, Plaintiffs were authorized by to file claims to the insurance carrier, file suit and enter legal actions as part of the signed Assignments of Benefits.

## SUBSTANTIVE ALLEGATIONS

9.    QualCare/Hospital operates, controls and/or administers managed healthcare insurance plans providing health and medical coverage to its members and dependents. At all relevant times, QualCare/Hospital provided certain members and/or their dependents with "out-of-network" benefits, enabling these individuals to gain access to the physicians (providers) of their choice, rather than limiting access only to "in-plan" physicians as would be true with a health maintenance organization plan.

10.    Specifically, in this case, the Plaintiff provided the treating doctors for the medical procedures administered to A.S. It is not disputed that all of the surgical procedures performed were "medically necessary" and were approved by QualCare/Hospital.

11.    The usual and customary fee, often referred to as the "reasonable and customary" fee, is defined, or is reasonably interpreted to mean, the amount that providers, like the Plaintiffs, normally charge to their patients in the free market, i.e. without

an agreement with an insurance company to reduce such a charge in exchange for obtaining access to the insurance company's subscribers. Moreover, the UCR fee means the usual charge for a particular service by providers in the same geographic area with similar training and experience.

12.   In each instance, prior to Plaintiff rendering services, QualCare/Hospital agreed to directly compensate Plaintiff their UCR fee for the services provided. Consequently, in each instance, Plaintiff reasonably believed and relied upon QualCare/Hospital's express or implied representations that Plaintiff would be paid the UCR fee and it was on that basis, Plaintiff agreed to render the services.

13.   Plaintiff, Neurosurgical Specialists, submitted a bill to Defendant, QualCare/Hospital, based on the reasonable and customary charges for Dr. John Cifelli, in the amount of $257,117.00 for date of service 8/6/2010. QualCare/Hospital issued payment to Plaintiff in the amount of $11,875.51. QualCare/Hospital issued an Explanation of Benefits ("EOB") indicating that $2,272.96 was applied as co-pay and that the remaining balance was not allowed. However, the portion designated by QualCare/Hospital as "patient's responsibility" and "remaining balance" are in dispute since Plaintiff challenges the reasonable and customary charge ("UCR") allowed by QualCare/Hospital for the subject date of service.

14.   Based upon the foregoing, Plaintiff hereby demands payment in the amount of $242,968.53.

15.   Plaintiff submitted appeals for reconsideration of the claim, and for further payment. Defendant failed to provide an appropriate response to the appeal,

Massood & Bronsnick, LLC
Attorneys at Law

because they failed to provide a copy of the Summary Plan Description in a timely manner, they failed to give a detailed explanation as to how they determined the approved amount for payment on the dates of service at issue, and they failed to properly process the claims for payment. Furthermore, Defendant failed to properly advise Plaintiff about the appeal process and therefore, Defendant did not properly consider payment on appeal.

16.   Defendant has not issued any further payments to Plaintiff.

17.   By and through this lawsuit, Plaintiff now seeks damages, due to Defendant's actions that have resulted in Plaintiff not receiving payment for the significant medical services rendered.

## FIRST COUNT
### (Violation of ERISA)

18.   Neurosurgical Specialists repeats and re-alleges all prior allegations as though fully set forth herein.

19.   This Count arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101 et seq.

20.   The Patients' plans, under which Patients are entitled to health insurance coverage under ERISA, are administered and operated by QualCare/Hospital and/or QualCare/Hospital's designated third-party administrator and/or agent under ERISA.

21.   QualCare/Hospital is the administrator and fiduciary in relation to the matters set forth herein because, *inter alia*, they exercise discretionary authority and/or discretionary control with respect to management of the plans under which Patients are entitled to benefits as assigned to Plaintiff.

Massood & Bronsnick, LLC
Attorneys at Law

22.   QualCare/Hospital is a fiduciary in relation to the matters set forth herein, by virtue of its exercise of authority and/or control and/or function control respecting the management and disposition of assets of the plans and/or by exercising discretionary authority and/or discretionary responsibility and/or functional authority in the administration of the Patients' plans.

23.   QualCare/Hospital's fiduciary functions include, *inter alia*, preparation and submission of explanation of benefits, determinations as to claims for benefits and coverage decisions, oral and written communications with Plaintiff concerning benefits to Patients under the plans, and coverage, handling, management, review, decision-making and disposition of appeals and grievances under the Patients' plans.

24.   Neurosurgical Specialists received assignment of benefits from A.S. which had "out of network" benefits for surgery under her plan or insurance agreement with or administered by QualCare/Hospital through which A.S. assigned to Neurosurgical Specialists, *inter alia*, the individual Patients' right to receive payment directly from QualCare/Hospital for the services that the patient received from Neurosurgical Specialists.

25.   The Assignment of Benefits that Neurosurgical Specialists received from A.S. confers upon Neurosurgical Specialists' status of "beneficiary" under § 502 (a) of ERISA, 29 USC § 1132(a)(1)(B) and § 1102(8) et seq.

26.   As a beneficiary under § 502 (a) of ERISA, 29 USC § 1132(a)(1)(B), Neurosurgical Specialists is entitled to recover benefits due (and/or other benefits due to the Patient), and to enforce the rights of the Patient (and/or the rights of the

Massood & Bronznick, LLC
Attorneys at Law

Patient) under ERISA law and/or the terms of the applicable plans/policies.

27.   Neurosurgical Specialists has sought payment of benefits under the applicable Patients' plans and QualCare/Hospital has refused to make payment to Neurosurgical Specialists for the medical services rendered to the A.S..

28.   The denial of A.S.'s claims are unsupported by substantial evidence, erroneous as a matter of law, not made in good faith, is arbitrary and capricious and is in violation of ERISA.

29.   The form and basis of the denial of the A.S.'s claims are insufficient and not in compliance with ERISA.

30.   Neurosurgical Specialists is entitled to recover the reasonable attorneys' fees and costs of action pursuant to 29 USC § 1132(g), et seq. and other provisions of ERISA, as applicable.

31.   There is no basis for the claims not being paid when the reasonable and customary charge is the standard.

WHEREFORE, Plaintiffs request judgment against Defendant for:

a)   Compensatory damages;

b)   Interest;

c)   Costs of suit;

d)   Attorney's fees; and

e)   Such other relief as the Court deems equitable and just.

Mavsood & Bronnick, LLC
Attorneys at Law

## SECOND COUNT
### (ERISA-Breach of Fiduciary Duty)

32.   Neurosurgical Specialists repeats and re-alleges all prior allegations as though

fully set forth herein.

33.  QualCare/Hospital has an obligation to supply all documents used in making any claims determination.

34.  QualCare/Hospital has an obligation to explain its determination regarding the denial of claims.

35.  QualCare/Hospital has a duty to provide Neurosurgical Specialists a full and fair hearing on the claims determination.

36.  QualCare/Hospital is a fiduciary under ERISA.

37.  QualCare/Hospital's determinations of all claims without any (or even substantial) explanation were arbitrary and capricious as well as being in violation of ERISA.

38.  QualCare/Hospital violated its fiduciary duty to the A.S. and Neurosurgical Specialists as assignee of A.S.

WHEREFORE, Plaintiffs requests judgment against Defendants for:

a)  Compensatory damages;

b)  Interest;

c)  Costs of suit;

d)  Attorney's fees; and

e)  Such other relief as the Court deems equitable and just.

## THIRD COUNT
### (Breach of Contract—QualCare)

39.  Plaintiff repeats and re-alleges all prior allegations as though fully set forth herein.

40.  QualCare conducts business in the State of New Jersey, including Passaic County,

Massood & Bronzick, LLC
Attorneys at Law

and venue was properly laid in Passaic County.

41.     QualCare issued a self-funded policy of insurance to A.S. and/or is obligated to provide health insurance to its insured's and their participating family members.

42.     QualCare breached its contract with Neurosurgical Spine Specialists of NJ a/s/o A.S., by failing to pay the reasonable and customary rate for the medical necessary services rendered under the terms of the policy, by failing to properly respond to the appeal, and by failing to comply with the terms of the Summary Plan Description.

43.     Consequently, Neurosurgical Specialists was damaged by QualCare's breach of contract.

WHEREFORE, Plaintiff requests judgment against Defendants for:

a)  Compensatory damages;

b)  Interest;

c)  Costs of suit;

d)  Attorney's fees; and

e)  Such other relief as the court deems equitable and just.


**FOURTH COUNT**
**(Breach of Contract—Englewood Hospital)**

44.     Plaintiff repeats and re-alleges all prior allegations as though fully set forth herein.

45.     Hospital conducts business in the State of New Jersey, including Passaic County, and venue was properly laid in Passaic County.

46.     Hospital issued a self-funded policy of insurance to A.S. and/or is obligated to

Marwood & Bronzaick, LLC
Attorneys at Law

provide health insurance to its insured's and their participating family members.

47.     Hospital breached its contract with Neurosurgical Spine Specialists of NJ a/s/o A.S., by failing to pay the reasonable and customary rate for the medical necessary services rendered under the terms of the policy, by failing to properly respond to the appeal, and by failing to comply with the terms of the Summary Plan Description.

48.     Consequently, Neurosurgical Specialists was damaged by Hospital's breach of contract.

WHEREFORE, Plaintiff requests judgment against Defendants for:

    f)   Compensatory damages;

    g)   Interest;

    h)   Costs of suit;

    i)   Attorney's fees; and

    j)   Such other relief as the court deems equitable and just.

### FIFTH COUNT
#### (Promissory Estoppel)

49.     Plaintiffs repeat and re-allege all prior allegations as though fully set forth herein.

50.     Plaintiffs rendered medical services to A.S., and therefore, Plaintiffs expected to be paid its UCR fee for the medically necessary services.

51.     In reliance upon Defendants' confirmation of coverage for medical services, prior to rendering services, Plaintiffs provided the QualCare/Hospital subscriber with "medically necessary" care and medical treatment.

52.     At no time did Defendants' ever withdraw its confirmation of coverage for

Masood & Bronznick, LLC
Attorneys at Law

medical services based upon reasonable and customary fees.

53.　Despite Defendants' continued confirmation of coverage for medical services for a reasonable and customary fee payment, Defendants have not appropriately paid Plaintiffs for the medical services rendered.

54.　Defendants' actions have therefore caused Plaintiffs to suffer a detriment of a definite and substantial nature in reliance upon Defendants' promise to pay for medical services at a reasonable and customary fee thus constituting an actionable claim pursuant to the doctrine of promissory estoppel.

55.　Defendants' actions have therefore caused Plaintiffs to suffer a detriment of a definite and substantial nature in reliance thereon, thus constituting an actionable claim pursuant to the doctrine of promissory estoppel.

56.　Plaintiffs have suffered significant damages as a result.

WHEREFORE, Plaintiffs requests judgment against Defendants for:

f)　Compensatory damages;

g)　Interest;

h)　Costs of suit;

i)　Attorney's fees; and

j)　Such other relief as the Court deems equitable and just.

### SIXTH COUNT
#### (Negligent Misrepresentation)

57.　Plaintiffs repeat and re-allege all prior allegations as though fully set forth herein.

58.　Despite its confirmation of reasonable and customary payment for medically necessary services, prior to Plaintiffs rendering of the services, Defendants negligently refused to pay the subject claims appropriately in accordance with

Massood & Bronstick, LLC
Attorneys at Law

said confirmation. Because of Defendants' negligent misrepresentation, Plaintiffs were paid less than the reasonable and customary rates.

59.    Defendants' negligent misrepresentation of medical coverage for services rendered at a reasonable and customary payment was unknown to Plaintiffs at the time it agreed to perform the medical services for the subscribers and/or their dependents. Plaintiffs reasonably expected and relied upon what it believed to be Defendants' honest representations that the Plaintiffs would be properly compensated in accordance with the medical coverage plan presented prior to the medical services being performed.

60.    Plaintiff's reliance on these representations was to its substantial detriment and as a result the Plaintiffs suffered significant monetary damages.

61.    By virtue of the foregoing, Defendants have committed negligent misrepresentation.

62.    Plaintiffs have suffered significant damages as a result.

WHEREFORE, Plaintiffs requests judgment against Defendants for:

    a)  Compensatory damages;

    b)  Interest;

    c)  Costs of suit;

    d)  Attorney's fees; and

    e)  Such other relief as the Court deems equitable and just.

## SEVENTH COUNT
### (Unjust Enrichment)

63.    Plaintiffs repeat and re-allege all prior allegations as though fully set forth herein.

64.    At all relevant times, Defendants consistently and systematically refused to pay

Maxwood & Broznick, LLC
Attorneys at Law

Plaintiffs reasonable and customary fees for the medical services rendered, contrary to Defendants' confirmation of payment terms.

65.    Defendants have therefore been unjustly enriched through the use of funds that earned interest or otherwise added to its profits when said money should have been paid in a timely and appropriate manner to Plaintiffs.

66.    Plaintiffs have suffered significant damages as a result.

WHEREFORE, Plaintiffs requests judgment against Defendants for:

a)  Compensatory damages;

b)  Interest;

c)  Costs of suit;

d)  Attorney's fees; and

e)  Such other relief as the Court deems equitable and just.

## EIGHTH COUNT

67.    Plaintiffs repeat and re-allege all prior allegations as though fully set forth herein.

68.    On or about the aforementioned dates and place, Defendants, ABC Corporations 1 through 10, were parties responsible for the payments of Plaintiff's reasonable and customary fees.

WHEREFORE, Plaintiffs requests judgment against Defendants for:

a)  Compensatory damages;

b)  Interest;

c)  Costs of suit;

d)  Attorney's fees; and

e)  Such other relief as the Court deems equitable and just.

Maxwood & Bronsnick, LLC
Attorneys at Law

## DESIGNATION OF TRIAL COUNSEL

The undersigned hereby designates Andrew R. Bronsnick, Esq. as trial counsel for the within matter.

## JURY DEMAND

The undersigned hereby demands a trial by jury as to all issues.

MASSOOD & BRONSNICK, LLC
Attorneys for Plaintiff

*/s/ Andrew R. Bronsnick*

_____
ANDREW R. BRONSNICK, ESQ.

Dated:  December 12, 2012
w:\wp51\majormed\cifelli\A.S.\amended complaint 12.7.12.docx

Massood & Bronsnick, LLC
Attorneys at Law

# EXHIBIT B



**KENNETH ZAHL, M.D., individually and on assignment of his patients, Plaintiff, v. CIGNA CORPORATION; JOHN AND JANE DOES 1-100, Fictitious Persons or Entities, Jointly, Severally, and Alternatively, Defendants.**

**Civ. Action No. 09-1527 (KSH)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2010 U.S. Dist. LEXIS 32268*

**March 31, 2010, Filed**

**NOTICE:** NOT FOR PUBLICATION

**COUNSEL:** [*1] KENNETH ZAHL, M.D., individually, KENNETH ZAHL, M.D., on ASSIGNMENT of his PATIENTS, Plaintiffs, Pro se, MORRISTOWN, NJ.

For CIGNA CORPORATION, Defendant: ERIC EVANS WOHLFORTH, LEAD ATTORNEY, JENNIFER MARINO THIBODAUX, GIBBONS, P.C., NEWARK, NJ.

**JUDGES:** Katharine S. Hayden, United States District Judge.

**OPINION BY:** Katharine S. Hayden

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

**I. INTRODUCTION**

This matter comes before the Court on the motion to dismiss [D.E. 14] filed by defendant Cigna Corporation ("Cigna") pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* ("FRCP") as to Counts One, Three, Four and Five of the amended complaint *pro se* plaintiff Kenneth Zahl filed in federal court. [D.E. 11.] The crux of this lawsuit pertains to Zahl's contention that Cigna has not properly paid for services he rendered as a medical doctor to members of health care plans administered by Cigna or its affiliates. Cigna submits that Counts One, Three and Four set forth, respectively, state law claims for breach of contract, misrepresentation, and unjust enrichment and are preempted by the federal Employment Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. § 1101, et seq.* Additionally, Cigna contends that

Count Five, [*2] in which Zahl seeks recovery for alleged breach of fiduciary duties under ERISA, is impermissibly pleaded as a re-characterization of a claim for benefits.

**II. BACKGROUND INFORMATION**

**a. Factual Allegations**

According to the amended complaint, Kenneth Zahl was a licensed physician in New York and New Jersey, specializing in chronic pain treatment. (Am. Compl. P 1.) The complaint states that on May 11, 2006, Zahl's license to practice medicine and surgery in New Jersey was revoked because he was found to have engaged in dishonest or fraudulent practices by over-billing $ 1,949 to Medicare. (*Id.* P 3.) On April 18, 2008, the relevant New York state authorities also revoked his medical license. (*Id.*)

According to Zahl, Cigna is one of the "big five" insurance carriers that provide health benefits to individuals throughout the United States. (*Id.* P 6.) He claims that Cigna issued insurance policies, received payment of premiums, and agreed to cause coverage to be issued to some of his patients. (*Id.* P 12.) He alleges that after he provided treatment to these patients in New Jersey and New York, they billed Cigna for the treatment and it, in turn, "either underpaid (by falsely and fraudulently [*3] using a deflated [Usable and Customary Rate]); or declined to pay for certain procedures, supplies or injectables." (*Id.* P 13.) He brings this lawsuit as a third party beneficiary of his patients' insurance benefits, which he claims he was assigned prior to rendering medical care. (*Id.* P 2.)

**b. Causes of Action**

In Count One, Zahl pleads a state law cause of action for breach of contract, in which he seeks to recover the health care benefits that he alleges were wrongfully denied by Cigna and/or its affiliates. (*Id.* P 20.) In Count Two, Zahl brings a cause of action under ERISA's *§ 502(a)(1)*, which provides a cause of action for a third party beneficiary seeking payment pursuant to patients' health plan benefits. (*Id.* PP 25-35.) In all, Zahl seeks $ 182,751.52 for his services rendered, plus consequential and compensatory damages, interest fees and costs. (*Id.* P 34.) Cigna does not move for dismissal of Count Two on this motion because it "arguably states a viable claim for benefits under ERISA." (Def.'s Br. 1.) In Count Three, Zahl brings a common law negligent misrepresentation claim, in which he alleges that Cigna promised to pay for his services and that he relied on those promises [*4] to his detriment. (Am. Compl. P 36.) In Count Four, Zahl brings a claim for unjust enrichment against Cigna because, as he asserts, it benefitted from his rendering of services to his patients, and in Count Five, he alleges that Cigna breached the fiduciary duty it owed him under ERISA without specifying the ERISA provision he invokes.

## III. DISCUSSION

Each of Zahl's five claims arises from his third party beneficiary interests, assigned to him by virtue of the medical services he provided to participants in employee benefit plans. (*See generally,* Am. Compl.) Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans; and further to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." *29 U.S.C. § 1001(b).* It is settled in this District that Zahl, as an assignee of these rights, stands in the shoes of his patients and may sue on their behalf to collect unpaid benefits. *See Wayne Surgical Center LLC v. Concentra Preferred Sys., Inc., 2007 U.S. Dist. LEXIS 61137, 2007 WL 2416428 (D.N.J. Aug. 20, 2007)* (Ackerman, J.) (holding that as an assignee [*5] of medical benefits, a medical provider has standing to sue under *§ 502(a) of ERISA*).

## A. State Law Claims under Counts One, Three, and Four

The purpose of ERISA is to provide a uniform regulatory scheme over legal issues relating to employee benefit plans. *See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983).* To this end, ERISA contains two statutory provisions that preempt state law causes of action: *§ 502(a),* codified as *29 U.S.C. § 1132(a),* which sets forth a comprehensive civil enforcement scheme foreclosing any state law claim

falling within its scope; and § 514(a), codified as *29 U.S.C. § 1144(a),* which preempts "any and all state laws" that "relate to any employee benefit plan." These provisions "are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Aetna Health Inc. v. Davila, 542 U.S. 200, 209, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004) (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S. Ct. 1895, 68 L. Ed. 2d 402 (1981)).* The Supreme Court has broadly applied these provisions to preempt "the subject of every state law that 'relates to' an employee benefit governed by ERISA." *FMC Corp. v. Holliday, 498 U.S. 52, 58, 111 S. Ct. 403, 112 L. Ed. 2d 356 (1990)* (internal quotation omitted). A plaintiff may not assert [*6] a state law cause of action that "has a connection with or reference to such a plan." *Shaw, 463 U.S. at 97. See also Illingworth v. Nestle U.S.A., 926 F. Supp. 482, 492 (D.N.J. 1996)* ("Because [plaintiff's] claim relates to an employee benefit plan, ERISA preempts New Jersey law, and any entitlement to relief is governed by federal law.").

Here, it is undisputed that each of Zahl's claims involves his rights as a beneficiary under his patients' health benefits. (*See* Am. Compl. P 11 ("Plaintiff Zahl is a third party beneficiary of the health care benefits issued by defendant CIGNA"); P 9 ("Plaintiffs believe that a Federal Court has jurisdiction over this action under [ERISA]"); P 12 ("Pursuant to these insurance policies, defendant Cigna received payment of premiums in [sic] and in consideration, therefore agreed to cause coverage to be issued to a patient of plaintiff. . .").)

In response to Cigna's motion for dismissal of his three state law claims, Zahl argues that the uncertainty of Cigna's role in the administration of the medical benefits at issue here makes it unclear whether his claims trigger ERISA preemption. To this end, he argues that "at this stage of the litigation, there [*7] is a possibility that if Cigna were solely the third party [administrator], that the employer itself might have privity with Zahl and would have to be joined under state law claims." (Pl.'s Br. 6.) Thus, he contends, during discovery "it will be known for sure whether the plans in question are governed or not under ERISA," behooving the Court to deny Cigna's motion to dismiss these claims so early in the litigation. (*Id.*)

ERISA covers two types of health benefit plans--pension plans, *see 29 U.S.C. § 1002(2)(A),* and welfare plans. *See 29 U.S.C. § 1002(1).* As one of ERISA's preemptive provisions states, "any and all state laws" that "relate to *any employee benefit plan*" are preempted. *29 U.S.C. § 1144(a)* (emphasis added). Counts One (breach of contract), Three (misrepresentation), and Four (unjust enrichment) are state law causes of action involving Zahl's rights as a third party benefi-

2010 U.S. Dist. LEXIS 32268, *

ciary of his patients' health care plan benefits. As such, the Court finds that irrespective of exactly what entity is the insurance company or underwriter, the insurance coverage alleged in the complaint relates to an "employee benefit." No amount of discovery can alter this fact. The state law claims fall **[*8]** under the umbrella of ERISA preemption, and Cigna's motion is granted as to Counts One, Three and Four. [1]

> 1   The Court notes that since 2007, Zahl has initiated 19 lawsuits in this District. Recently, Judge Hochberg granted Unitedhealth Group's motion to dismiss state law claims brought by Zahl because they were preempted by ERISA. *Zahl v. Unitedhealth Group Inc.,* Civ. No. 09-1321 (Sept. 24, 2009).

**B. Count Five -- Claim for Breach of Fiduciary Duties under ERISA**

In Count Five, Zahl alleges that under ERISA Cigna breached the fiduciary duties it owed him as a third party beneficiary. (*See* Am. Compl. PP 33-34.) As he does in each of his other claims, he seeks damages. (*Id.* P 35.) Cigna argues that this claim should be dismissed because "a claimant pressing a claim for plan benefits under *Section 502(a)(1),*" which Zahl does in Count Two, "cannot re-characterize that claim as one for breach of fiduciary duties under *Section 502(a)(3).*" (Def.'s Br. 12.)

In *D'Amico v. CBS Corporation, 297 F.3d 287, 291 (3d Cir. 2002),* pension plan participants sued their former employer under ERISA alleging that there had been an illegal partial termination of a plan that entitled all non-vested participants to **[*9]** become vested. In finding that a plaintiff who brings a claim for breach of fiduciary duties under ERISA must exhaust his administrative remedies, the Third Circuit held that claims for breach of fiduciary duties may be "synonymous with a claim to enforce the terms of a benefit plan," and are held to the same exhaustion requirements imposed on claims to enforce ERISA-regulated plans. *Id.* Similarly, in *Harrow v. Prudential Insurance Company of America, 279 F.3d 244 (3d Cir. 2002),* the Third Circuit held that "a claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA." *279 F.3d at 254* (internal quotations omitted).

Relying on these decisions, in *Morley v. Avaya, Inc. Long Term Disability Plan, 2006 U.S. Dist. LEXIS 53720, 2006 WL 2226336, at \*23 (D.N.J. Aug. 3, 2006),* Judge Cooper dismissed a claim by an employee who, in addition to her claims for damages, sought equitable relief under *Section 502(a)(3)* against the threat of future

claim denials by her employer. Judge Cooper rejected plaintiff's argument that such a claim could be viable:

> [*Section 502(a)(3)*]   **[*10]** provides that a civil action may be brought "by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter." Thus, the relief available under *Section [502(a)(3)(B)]* is limited to "appropriate equitable relief," of which "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"

(*Quoting 29 U.S.C. 1132(a)(3)* and *Varity Corp. v. Howe, 516 U.S. 489, 515, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996)* (internal citations omitted)). Judge Cooper granted summary judgment on the claim because plaintiff did not "claim[] any additional relief under her breach of fiduciary duty claim that she is not otherwise potentially entitled to if she prevails on her wrongful denial of benefits claim." *Id.* In response to the plaintiff's argument that because she sought equitable relief under *Section 502(a)(3)* and damages under *502(a)(1)* the claims were not duplicative, Judge Cooper wrote that the equitable relief **[*11]** sought "does not constitute 'additional relief' otherwise not provided for in *Section [502(a)(1)]*. Instead, this type of relief is *specifically* provided for and contemplated by the language in *Section [502(a)(1)].*" *2006 U.S. Dist. LEXIS 53720, [WL] at \*24* (emphasis in original).

Additionally, in *McCoy v. Bd. of Trustees of Laborers' Int'l Union Loc. No. 222, 188 F.Supp.2d 461, 472, fn. 10 (D.N.J. 2002),* the plaintiff prevailed on certain claims under ERISA, but Judge Orlofsky granted defendant's motion for summary judgment on the claim of breach of fiduciary duty, holding that the plaintiff could not receive anything under that claim that the court had not already awarded him under his claim for benefits. "Equitable relief for a breach of fiduciary duty claim is not appropriate in that circumstance." *Id.*

The amended complaint contains no indication that Zahl's claim of breach of fiduciary duties is distinct from his claim for benefits in Count Two, which asserts that as the assignee of unspecified patients, he did not receive all the benefits he was due under these patients' health benefit plans. Under this framework, an interpretation or

2010 U.S. Dist. LEXIS 32268, *

application of ERISA would be unnecessary. *See Harrow, 279 F.3d at 254* (where [\*12] claim calls for interpretation and application of benefits plan, it is a claim for benefits, not breach of fiduciary duty). While *§ 502(a)(3)* creates a cause of action for breach of fiduciary duties imposed by ERISA, the Supreme Court has held that it is a "safety net," or "catch-all" provision allowing for "appropriate equitable relief for injuries caused by violations that *§ 502* does not elsewhere adequately remedy." *Varity Corp, 516 U.S. at 512*. Moreover, unlike the plaintiffs in *Morley* and *McCoy,* Zahl does not even seek different forms of relief in Count Two and Count Five. Instead, he seeks damages in both, further establishing the impermissibly duplicative nature of the two claims and that *§ 502(a)(3)* is unavailable because he does not seek "additional relief" otherwise not provided for in *§ 502(a)(1)*. Zahl's claim in Count Five, which will provide him no relief additional to that which he may receive in Count Two, is dismissed.

**IV. Conclusion**

For the foregoing reasons, Cigna's motion to dismiss Counts One, Three, Four and Five of the amended complaint is granted. An appropriate order will be entered.

/s/ Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.

**ORDER**

For the reasons expressed   [\*13] in the opinion filed herewith, and with good cause appearing;

**IT IS** on this 31st day of March, 2010 hereby

**ORDERED** that Cigna Corporation's motion [D.E. 14] to dismiss Counts One, Three, Four and Five of Zahl's amended complaint [D.E. 11] is **granted.**

/s/ Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.

# EXHIBIT C

2001 U.S. Dist. LEXIS 20103, *; 27 Employee Benefits Cas. (BNA) 1684



LOUIS SCIOTTO and JOHN SCIOTTO, Plaintiffs, v. UNITED STATES HEALTHCARE SYSTEMS OF PENNSYLVANIA INC., d/b/a AETNA U.S. HEALTHCARE, Defendant.

CIVIL ACTION No. 01-CV-4973

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2001 U.S. Dist. LEXIS 20103; 27 Employee Benefits Cas. (BNA) 1684

December 5, 2001, Decided

**DISPOSITION:**     Motion to remand was denied.

**COUNSEL:**  [*1]  For LOUIS SCIOTTO, PLAINTIFF: JAMES J. BYRNE, JR., ROBERT E. J. CURRAN, CURRAN & BYRNE, P.C., MEDIA, PA USA. BRIAN J. SELEYO, CURRAN & BYRNE, MEDIA, PA USA.

For JOHN SCIOTTO, PLAINTIFF: JAMES J. BYRNE, JR., ROBERT E. J. CURRAN, CURRAN & BYRNE, P.C., MEDIA, PA USA.

For UNITED STATES HEALTHCARE SYSTEMS OF PENNSYLVANIA, INC. d/b/a/ AETNA U.S. HEALTHCARE, DEFENDANT: CHARLES M. O'DONNELL, ELLIOTT, REIHNER, SIEDZIKOWSKI & EGAN, P.C., BLUE BELL, PA USA. PATRICIA C. COLLINS, ELLIOTT, REIHNER, SIEDZIKOWSKI & EGAN, P.C., BLUE BELL, PA USA.

**JUDGES:** RONALD L. BUCKWALTER, J.

**OPINION BY:** RONALD L. BUCKWALTER

**OPINION**

**MEMORANDUM**

BUCKWALTER, J.

December 5, 2001

Presently before this Court is Plaintiff Louis Sciotto and Plaintiff John Sciotto's ("Plaintiffs'") motion to remand this action to the Court of Common Pleas of Del-

aware County, Pennsylvania. For the reasons stated below, the motion is **DENIED.**

**I. STATEMENT OF FACTS**

On January 10, 1997, Louis Sciotto suffered a severe spinal cord injury during his high school wrestling practice that left him paralyzed, dependent on a ventilator, and in need of substantial ongoing medical care. At the time of his injury, Louis [*2]  Sciotto was covered by a medical insurance policy issued by Defendant to his father, John Sciotto, as a benefit in connection with the senior Sciotto's employment. Seeking redress for their son's injuries, John Sciotto and his wife filed suit in federal court on behalf of their son against the school district, its athletic director, its head wrestling coach, and the former student who was wrestling with their son at the time of his injury. While that litigation was pending, Defendant asserted a subrogation lien for medical expenses paid on behalf of Louis Sciotto in the amount of $ 1,087,000. Plaintiffs allege that in connection with settlement discussions in that case, Defendant represented that in 2000, Plaintiffs would be covered under the same medical insurance policy in effect for them during 1999. Subsequently, that litigation was settled, and Defendant was reimbursed its subrogation lien less attorney's fees.

After settlement, Plaintiffs were informed that, in fact, they would *not* have access to the same medical coverage in 2000, and would be covered under a less expansive policy which, they allege, restricts private duty nursing benefits critical to Louis Sciotto's care.  [*3]  As a result, approximately $ 500,000 in medical bills for nursing care in 2000 were not paid by Defendant.

On July 25, 2001, Plaintiffs filed this action in the Court of Common Pleas of Delaware County, Pennsyl-

Case 2:12-cv-05210-CCC-JAD   Document 20-3   Filed 04/29/13   Page 23 of 25 PageID: 156

Page 2

2001 U.S. Dist. LEXIS 20103, *; 27 Employee Benefits Cas. (BNA) 1684

vania, and filed an Amended Complaint in that Court on August 31, 2001. In their Amended Complaint, Plaintiffs allege state common law claims of breach of contract, misrepresentation, fraudulent misrepresentation, and unjust enrichment against Defendant for its failure in 2000 to maintain the same insurance policy coverage for them that was in effect during 1999. Plaintiffs allege that Defendant's representations as to this matter were critical to the settlement of the prior litigation.

On October 1, 2001, Defendant removed this matter to this Court, asserting that Plaintiffs' claims are preempted by the Employment Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. § 1001 et seq.*, and that the action is therefore removable under the complete preemption exception to the well-pleaded complaint rule. Plaintiffs now counter in their motion that the case is not so removable and must be remanded.

## II. LEGAL STANDARD

By statute, "any [*4] civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." *28 U.S.C. § 1441(a)*. One category of cases for which federal district courts have original jurisdiction are cases "arising under the Constitution, law or treaties of the United States." *28 U.S.C. § 1331*. In general, a cause of action only arises under federal law when the face of the plaintiff's well-pleaded complaint raises federal law issues. *Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 53 L. Ed. 126, 29 S. Ct. 42 (1908)*. Federal preemption, a defense, is usually not a part of a plaintiff's well-pleaded complaint and therefore ordinarily does not, in and of itself, allow for removal to federal court. However, the Supreme Court has recognized that in certain instances Congress may so completely preempt an area of law that state claims are effectively converted into claims arising under federal law. See *Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 20 L. Ed. 2d 126, 88 S. Ct. 1235 (1968)*. In *Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987)*, [*5] the Supreme Court held that an action asserting only state law claims is *completely* preempted, and is therefore removable as an exception to the well-pleaded complaint rule, if the state law claims are preempted both by ERISA's general preemption clause, § 514(a), *as well as* its provision that sets forth its civil enforcement mechanism, § 502(a). *Id. 481 U.S. at 62-67*.

ERISA's general preemption clause, § 514(a), preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. *29 U.S.C. § 1144(a)*. In this context, the term "State law" encompasses state common law causes of action, as it includes "all laws, decisions, rules, regulations or other state action having the effect of law,

of any State." *29 U.S.C. § 1144(c)(1)*. ERISA's civil enforcement provision, § 502(a), states in pertinent part that "a civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan." *29 U.S.C. § 1132* [*6] *(a)*.

## III. DISCUSSION

The first prong of the removal (or complete preemption) analysis concerns whether Plaintiffs' claims "relate to" an ERISA benefit plan so as to be expressly preempted by ERISA's general preemption clause, § 514(a). Plaintiffs argue that their state common law claims for breach of contract, misrepresentation, fraudulent misrepresentation, and unjust enrichment are not preempted because they "relate to" the *future availability* of an employee benefit plan, rather than the administration of a plan in place for them. Plaintiffs contend that, although the phrase "relate to" has been interpreted in the normal, rather broad sense of the phrase, to mean "a connection with or reference to such a plan," *Shaw v. Delta Airlines, Inc., 463 U.S. 85, 97, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983)*, in this case the connection with a plan is just too "tenuous, remote or peripheral" to be preempted by ERISA. *Id. 463 U.S. at 100*. Plaintiffs direct the Court to two cases in support of their argument: *Greenblatt v. Budd Co., 666 F. Supp. 735 (E.D. Pa. 1987)* and *Albert Einstein Med. Ctr. v. Action Mfg. Co., 697 F. Supp. 883 (E.D. Pa. 1988)*. [*7] Unfortunately for Plaintiffs, Albert Einstein is notably inapposite to the facts of this case, and neither decision represents the weight of authority after the Supreme Court's decision in *Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 112 L. Ed. 2d 474, 111 S. Ct. 478 (1990)*.

In *Albert Einstein*, an employer allegedly made representations to a medical provider that it would pay for all services rendered to its employee, when in fact the employee's benefit plan capped her amount of medical benefits. The medical provider sued the employer for recovery of the unpaid expenses under a theory of estoppel. The Court held that ERISA did not preempt the medical provider's estoppel claim because, it reasoned, the claim did not turn on any interpretation of the rights of - and in fact was completely independent from - the beneficiary's *actual* rights under the plan. *Albert Einstein, 697 F. Supp. at 884*. In contrast, in the case before this Court, Plaintiffs are beneficiaries of a plan seeking to recover benefits pursuant to the terms of the plan under which they were covered in 1999, and, they allege, under which they should have been covered in 2000. [*8]

2001 U.S. Dist. LEXIS 20103, *; 27 Employee Benefits Cas. (BNA) 1684

1    Greenblatt is more similar to the case at bar. In Greenblatt, the court held that ERISA did not preempt a beneficiary's state law claim of misrepresentation against his employer for allegedly promising the beneficiary that his pension benefit plan would be made equal to the benefits provided to similarly-salaried employees who were covered under a different plan. However, as discussed infra, that case does not represent the weight of authority after Ingersoll-Rand.

However, the Supreme Court has provided additional guidance in this area that postdates both Albert Einstein and Greenblatt. In Ingersoll-Rand, the Court found that ERISA preempted a plan participant's state law cause of action for wrongful termination due to his employer's attempt to avoid paying pension benefits. Since the cause of action was predicated on the existence of an ERISA plan and the court's inquiry must therefore be directed to the plan, the Court found that such a cause of action "relate[d] to" an [*9] ERISA plan under the meaning of § 514(a). *Ingersoll-Rand, 498 U.S. at 139-140*. In short, the Court held, ERISA preempts state causes of action where "there simply is *no cause of action* if there is no plan." *Id. 498 U.S. at 140* (emphasis in original). [2] Plaintiffs' claims in the case before this Court similarly depend upon the existence of an employee benefit plan, and similarly direct the Court's inquiry to the terms of the two plans at issue. Plaintiffs' contention that their claims concern the future availability of a plan, as opposed to the administration of a plan in place, is therefore a distinction that makes no difference under Ingersoll-Rand.

2    The Court continues to cite with approval this category of ERISA-preempted state law. See, e.g., *DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund, 520 U.S. 806, 815 n.14, 138 L. Ed. 2d 21, 117 S. Ct. 1747 (1997)*.

Accordingly, after Ingersoll-Rand, the weight of authority holds that under § 514(a), ERISA [*10] expressly preempts state common law causes of action in which plan participants or beneficiaries allege that misrepresentations made or contracts entered into outside the terms of their benefits plan require that benefits be provided to them. [3] While most of these cases involve suits against employers, the reasoning behind these decisions is equally applicable to suits against ERISA benefit plan administrators, such as Defendant. Such an analysis is also compatible with the general distinction recently clarified by the Third Circuit - that, while suits against plan administrators are not preempted if they concern "the quality of the medical treatment performed," they are completely preempted if they challenge "the administration of or eligibility for benefits." *Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 272-273 (3d Cir. 2001)*.

3    See, e.g., *Buxton v. Consol. R. Corp., 1999 U.S. Dist. LEXIS 186*, No. 98-2409, 1999 WL 46610 (E.D. Pa. Jan. 6, 1999)(ERISA preempts breach of contract, negligent misrepresentation and promissory estoppel claims by employee against employer when employer allegedly misrepresented that it would rescind employee's application for voluntary separation program that terminated employee's ability to participate in ERISA plan if employee obtained employment elsewhere within company while application was pending); *Penyak v. UNUM Life Ins. Co. of America, 1998 U.S. Dist. LEXIS 5023*, No. 97-2117, 1998 WL 171213 (D. Kan. Mar. 12, 1998)(ERISA preempts breach of contract, negligent misrepresentation and promissory estoppel claims by beneficiary against employer when employer allegedly misrepresented that employee would qualify for disability insurance coverage); *Wassil v. Advanced Tech. Labs., Inc., 1996 U.S. Dist. LEXIS 6107*, No. 95-6777, 1996 WL 238688 (E.D. Pa. May 7, 1996)(ERISA preempts breach of contract and unjust enrichment claims by employee against employer when employer failed to provide retirement plan benefits allegedly due upon corporate sale pursuant to employee's written employment contract); *Nealy v. U.S. Healthcare HMO, 844 F. Supp. 966 (S.D.N.Y. 1994)*(ERISA preempts breach of contract and misrepresentation claims by beneficiary against plan administrator when administrator allegedly misrepresented that beneficiary's special health needs would be covered under plan); *Bernatowicz v. Colgate-Palmolive Co., 785 F. Supp. 488 (D. N.J.), aff'd., 981 F.2d 1246 (3d Cir. 1992)*(ERISA preempts negligent misrepresentation claim by beneficiary against employer when employer allegedly misrepresented plan eligibility rule and beneficiary lost opportunity for certain pension benefits).

[*11]    One case in particular that presents a similar fact pattern to the case at bar is *Franklin v. QHG of Gadsden, Inc., 127 F.3d 1024 (11th Cir. 1997)*. In that case, the plaintiff told a potential future employer that she would only accept a job offer if her husband, who required 24-hour home nursing care and was receiving that care pursuant to the benefit plan of his former employer, would have access to the same level of care under the benefit plan provided by her new employer. After receiving assurances that her husband would be "grandfathered" into immediate eligibility for home nursing care under the new plan, she accepted employment.

2001 U.S. Dist. LEXIS 20103, *; 27 Employee Benefits Cas. (BNA) 1684

However, after her job began and her employer was subsequently bought, the plaintiff was notified that her employer's plan would be modified to exclude such coverage. The court held that the plaintiff's claims for fraud in the inducement, deceit, and misrepresentation were preempted by ERISA. [4] The court reasoned that the claims asserted were related to an ERISA plan because the benefits promised by the defendant and sought by the plaintiff were ERISA plan benefits, and because the claims would require a court to compare the benefits [*12] available under various ERISA plans. *Id. 127 F.3d at 1028-1029.* This is exactly what the claims in the present case call upon this Court to do.

> 4   In fact, significantly, the court ruled that these claims were completely preempted under ERISA and therefore subject to removal to federal court. *Id. 127 F.3d at 1029.*

Finally, after Ingersoll-Rand, many courts have specifically rejected Greenblatt and Albert Einstein. See, e.g., *Bernatowicz, 785 F. Supp. at 493* ("Greenblatt ... is not critically distinguishable from the present case; however, I decline, as did the Seventh Circuit in *Lister v. Stark, 890 F.2d 941 (7th Cir. 1987),* to follow Greenblatt here."); *Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund, 785 F. Supp. 536 (W.D. Pa. 1992); Northwestern Inst. of Psychiatry, Inc. v. Travelers Ins. Co., 1992 U.S. Dist. LEXIS 16825,* No. 92-1520, 1992 WL 236257 at *7 (E.D. Pa. Sept. 3, 1992)(declining [*13] to follow Albert Einstein in light of Ingersoll-Rand); *Ricci v. Gooberman, 840 F. Supp. 316, 318 n.4 (D. N.J. 1993); Penyak, 1998 U.S. Dist. LEXIS 5023, 1998 WL 171213* at *6 ("The authorities cited by plaintiff, e.g., Greenblatt ... have not been followed by most courts.")

In light of all the above, this Court finds that ERISA preempts Plaintiffs' claims under § 514(a) because they "relate to" an ERISA plan.

The second prong of the removal analysis concerns conflict preemption under the ERISA's civil enforcement provision, § 502(a). Plaintiffs did not direct any argument or case law to this issue in their motion. Again, this provision states in pertinent part that "a civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan." *29 U.S.C. § 1132(a).* This action falls neatly within this enforcement provision, since suit is being brought by plan beneficiaries who seek to recover the cost of medical bills due as benefits under the terms of the plan that Plaintiffs allege was - or should have been - applied to them at that time.

Because the "comprehensive civil enforcement [*14] scheme established by Congress represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans," the Court in Ingersoll-Rand also concluded that ERISA preempts state laws that effectively provide alternate enforcement mechanisms. *Ingersoll-Rand, 498 U.S. at 142-145* (quoting *Pilot Life v . Dedeaux, 481 U.S. 41, 54, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987)*(citations omitted). The claims asserted by Plaintiffs are such state laws. As a result, the Court finds that Plaintiffs claims are preempted by this ERISA provision as well. Therefore, this matter is subject to complete preemption and removal under Metropolitan Life.

## IV. CONCLUSION

The Court finds that removal of this matter to this Court was proper pursuant to *28 U.S.C. § 1441(a)* and *28 U.S.C. § 1331* because the state common law claims asserted by Plaintiffs are completely preempted by ERISA. For this reason, Plaintiffs' motion for remand is denied.

An appropriate order follows.

## ORDER

AND NOW, this 5th day [*15] of December 2001, upon consideration of Plaintiffs' Motion to Remand (Docket No. 5) and Defendant's response thereto (Docket No. 6) it is hereby **ORDERED** that Plaintiff's Motion is **DENIED**.

In accordance with the court approved stipulation of counsel, Plaintiff's response to Defendant's pending Motion to Dismiss is due on or before December 26, 2001.

BY THE COURT:

RONALD L. BUCKWALTER, J.