# EXHIBIT F

Case 2:12-cv-05210-CCC-JAD Document 20-6 Filed 04/29/13 Page 2 of 16 PageID: 191

Page 1
2013 U.S. Dist. LEXIS 15327, *



MONTVALE SURGICAL CENTER, LLC a/s/o JUSTIN GUTSCHMIDT, Plaintiff, v. HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY INC. and DISTRICT COUNSEL IRONWORKERS WELFARE FUND OF NORTHERN NEW JERSEY, Defendants.

Civil Action No. 12-3685 (SRC)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

*2013 U.S. Dist. LEXIS 15327*

February 5, 2013, Decided
February 5, 2013, Filed

**NOTICE:** NOT FOR PUBLICATION

**COUNSEL:** [*1] For MONTVALE SURGICAL CENTER, LLC, a/s/o JUSTIN GUTSCHMIDT, Plaintiff: ANDREW R. BRONSNICK, LEAD ATTORNEY, MASSOOD & BRONSNICK, LLC, WAYNE, NJ.

For HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY INC., Defendant: MATTHEW A. BAKER, LEAD ATTORNEY, CONNELL FOLEY LLP, LIBERTY VIEW, CHERRY HILL, NJ.

For DISTRICT COUNCIL IRONWORKERS FUND OF NORTHERN NJ, Defendant: REGINA C. HERTZIG, LEAD ATTORNEY, CLEARY & JOSEM, LLP, PHILADELPHIA, PA.

**JUDGES:** STANLEY R. CHESLER, United States District Judge.

**OPINION BY:** STANLEY R. CHESLER

**OPINION**

CHESLER, District Judge

This matter was initiated upon two separate motions to dismiss for failure to state a valid claim for relief, pursuant to *Federal Rule of Civil Procedure 12(b)(6)*: one filed by Defendant Ironworkers District Council of North Jersey Welfare Fund[1] (the "Fund") [docket entry 6] and the other by Defendant Horizon Blue Cross Blue Shield of New Jersey Inc. ("Horizon") [docket entry 12] (collectively, "Defendants"). The motions were fully briefed. Upon review of the papers, and pursuant to *Federal Rule of Civil Procedure 12(d)*, the Court converted both motions to dismiss into motions for summary judgment pursuant to *Federal Rule of Civil Procedure 56*. See December 18, 2012 Order [docket [*2] item no. 14]. The Court provided the parties with notice of the conversion as well as an opportunity to submit relevant supplemental material regarding the motions. See id. The parties did not submit any additional materials nor did they otherwise submit any papers in response to the Court's *Rule 12(d)* conversion order. The Court therefore proceeds to rule on the motions under the standard of *Rule 56* and based on the papers submitted prior to the conversion. The Court rules without oral argument pursuant to *Federal Rule of Civil Procedure 78*. For the reasons discussed below, it will grant summary judgment in favor of Defendants.

1 Defendant the Fund was improperly named in the Complaint as "District Counsel Ironworkers Welfare Fund of Northern New Jersey."

**I. BACKGROUND**

This is an action concerning the allegedly improper underpayment of healthcare benefits under the Fund's health plan (the "Plan"), a self-funded welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. § 1001, et seq.* The Plan was administered by Defendant Horizon, but the Fund pays benefits and makes all final claims decisions. Plaintiff Montvale Surgical Center ("Plaintiff" [*3] or "Montvale") is an outpatient ambulatory surgery center where minimally invasive pain management and podiatry procedures are performed. It is an "out of net-

work" provider, meaning it does not participate in Horizon's preferred provider network.

Montvale rendered services for patient Justin Gutschmidt, a participant in the Plan, obtained a signed assignment of benefits from him, and submitted claims for reimbursement. Plaintiff alleges that it has not received full payment on these claims. The Complaint asserts state common law claims for breach of contract, promissory estoppel, negligent misrepresentation and unjust enrichment.

## II. DISCUSSION

### A. Standard of Review

Defendants initially challenged the sufficiency of the Complaint under *Rule 12(b)(6)*. On a *Rule 12(b)(6)* motion, however, the Court is limited in its review to a few basic documents: the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. See *Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)*. Because Defendants presented extraneous material in support of their motions, the [*4] Court exercised its authority to treat them as motions for summary judgment.

The standard upon which a court must evaluate a summary judgment motion is well-established. *Federal Rule of Civil Procedure 56(a)* provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*; see also *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*; *Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000)*. "When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003)* (quoting *United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991))*. "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court [*5] - that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See *Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998)*.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985)*. The non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)*. The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson, 477 U.S. at 248*; see also *Fed.R.Civ.P. 56(c)* (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . [*6] . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990)*. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001)*. If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992)* (quoting *Celotex, 477 U.S. at 322-23*).

### B. Analysis

Defendants raised two arguments in their motions to dismiss. First, they moved to dismiss the Complaint the grounds that ERISA preempts state law claims. Second, Defendants argued that, even if the Complaint were amended to assert the appropriate claim under ERISA's civil enforcement provision, § 502(a), Plaintiff would fail to state a [*7] claim upon which relief could be granted because the factual allegations of the Complaint demonstrate that Plaintiff failed to exhaust administrative remedies.[2] It was Defendants' exhaustion-based argument that prompted the Court to convert the motions to motions for summary judgment, as both Plaintiff and Defendants relied on factual assertions and exhibits not set forth in or incorporated into the Complaint.

> 2  In their motions, Defendants did not challenge the Complaint on the issue of whether the assignment of benefits gives Plaintiff standing to

pursue these claims, and this Court will not raise the issue *sua sponte.*

The first argument, regarding ERISA preemption, can be dispensed with summarily. ERISA preemption of state law causes of action is well-established. See *Aetna Health, Inc. v. Davila,* 542 U.S. 200, 209, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004). ERISA § 502(a) is the statute's civil enforcement mechanism, and *subsection (1)(B)* expressly grants a plan participant or beneficiary the right to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *29 U.S.C. § 1132(a)(1)(B).* [*8] The Supreme Court has held that "the ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Davila,* 542 U.S. at 209 (quoting *Metropolitan Life,* 481 U.S. at 65-66). Indeed, the statute itself contains a preemption provision. *ERISA § 514(a)* provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *29 U.S.C. § 1144(a).* Suits brought by participants or beneficiaries of ERISA plans concerning matters that "relate to" those plans are governed by the cause of action provided by *ERISA § 502(a). Davila,* 542 U.S. at 208-09. All of the state law causes of action seek to recover the benefits to which Montvale claims it is entitled under the Plan. Clearly, the claims "relate to" the plan. The entire Complaint is subject to dismissal on preemption grounds alone.

Plaintiff does not oppose Defendants' preemption argument. In fact, it would appear that Montvale implicitly requests to proceed on an *ERISA § 502(a)* claim, as its entire opposition [*9] brief is dedicated to arguing that Defendants' arguments regarding the failure to exhaust do not preclude Montvale from pursuing a § 502(a) claim. Of course, a party may not amend its complaint in a brief submitted in opposition to a motion to dismiss. *Frederico v. Home Depot,* 507 F.3d 188, 201-02 (3d Cir. 2007). The Court would, however, permit Plaintiff the opportunity to amend the Complaint to re-plead its cause of action as a § 502(a) claim unless that amendment would be futile. See *Phillips,* 515 F.3d at 236 (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile.") The Court therefore turns to Defendants' arguments that Plaintiff's § 502(a) claim would fail as a matter of law based on Montvale's failure to exhaust the Plan's administrative remedies.

It is well-established that an ERISA plan participant must exhaust the administrative remedies under the plan before she may initiate a lawsuit to recover benefits or otherwise enforce her rights under the terms of the plan pursuant to the cause of action created by *ERISA § 502(a)(1)(B). Harrow v. Prudential Ins. Co. of Am.,* 279 F.3d 244, (3d Cir. 2002). [*10] While the statute itself does not expressly require exhaustion of administrative remedies as a prerequisite to sue, the United States Court of Appeals for the Third Circuit has described the exhaustion requirement as a judicial innovation serving many sound policies, among others, reducing frivolous lawsuits, promoting the consistent treatment of claims for benefits, and enhancing fiduciary management of plans by preventing premature judicial intervention in the plan fiduciaries' decision-making process. *Metropolitan Life Ins. Co. v. Price,* 501 F.3d 271, 279 (3d Cir. 2007) (citing *Harrow,* 279 F.3d at 249 and *Amato v. Bernard,* 618 F.2d 559, 567-68 (9th Cir.1980)). The exhaustion requirement is a non-jurisdictional affirmative defense. *Price,* 501 F.3d at 280. *Id.* at 280; see also *Jakimas v. Hoffmann-La Roche, Inc.,* 485 F.3d 770, 782 (3d Cir. 2007) (holding that defendant bears the burden of proving an affirmative defense to plaintiff's ERISA claims).

The relevant Plan provision, applicable to post-service hospital and medical claims, such as those submitted by Montvale with regard to the services provided to Gutschmidt, provides the following administrative remedy structure:

> There is a [*11] two level review for post-service Hospital and Medical claims. You will be sent a notice of a decision by Horizon within 30 days for the first level of appeal. If you are dissatisfied with the decision of the first appeal, you may submit a second appeal to the Board of Trustees within 180 days of the receipt of the first decision. You will be sent a notice of a decision by a Sub-committee of the Board of Trustees within 30 days of receipt for the second level of appeal.

(Fund Br., Ex. A at 82.) The Plan reiterates this information by providing Horizon's address for submission of post-service hospital and medical claims and the Board of Trustees' address for submission of other appeals, including specifically "the second level appeal for hospital and medical claims." (Id. at 80-81.)

Defendants argue that Plaintiff did not exhaust its administrative remedies as required by the Plan because it did not properly submit a second level appeal to the Board of Trustees. They rely on the Certification of the Fund Administrator, whose responsibilities include receiving all appeals pursuant to the Plan. The Fund Ad-

ministrator, Peter A. Sclafani, states he has "not received any appeal from Justin [*12] Gutschmidt or any assignee of Mr. Gutschmidt concerning services provided by Montvale Surgical Center addressed to the Trustees of the Fund." (Sclafani Cert., ¶ 7.)

Plaintiff does not dispute this fact or submit evidence to controvert Defendants' demonstration that no appeal was filed with the Fund's Board of Trustees. Instead, it argues that the second level appeal is not mandatory, and that, even if it were, Plaintiff complied with that obligation by submitting a second level appeal to *Horizon*. Plaintiff's arguments are unavailing. The Plan clearly requires that two levels of appeals must be exhausted before the initiation of litigation. It notifies the insured that he may not file "a lawsuit to obtain benefits until after you have requested a review and a *final* decision has been reached on review." (Fund Br., Ex. A at 83) (emphasis added). The review provision makes clear that, for the claim at issue, "there is a two-level review." (Id. at 82.) Though the provision states that a claimant "may" submit a second appeal if it is dissatisfied with Horizon's first-level decision, the word "may" advises the claimant of his right to further review. It does not change the nature of the full [*13] review process, which consists of two levels, and it does not modify the provision requiring that a final decision be made in that process before a lawsuit may be filed. Montvale alternatively asserts that it "substantially complied" with the two-level appeals process by submitting a second administrative appeal to Horizon, rather than to the Board of Trustees. However, Montvale provides no legal authority holding that substantial compliance with ERISA plan terms is sufficient to fulfill ERISA's pre-litigation exhaustion requirement.

Finally, Plaintiff attempts to salvage its private action under *ERISA § 502(a)* on the grounds that exhaustion of Plan remedies would have been futile. While the Third Circuit recognizes that an exception to the exhaustion requirement applies when "resort to the administrative process [under the ERISA plan] would be futile," it has held that a plaintiff merits this waiver only when the plaintiff makes "a clear and positive showing of futility." *Harrow, 279 F.3d at 249* (quoting *Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990)* and *Brown v. Cont'l Baking Co., 891 F. Supp. 238, 241 (E.D. Pa. 1995))*. In Harrow, the Court of Appeals identified various [*14] factors a court may weigh to assess whether exhaustion should be excused on grounds of futility. They are:

> (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile.

*Id. at 250*. These factors need not all carry the same weight, and a court should consider the applicability of the futility exception in light of the circumstances of a particular case. Id.

The factors do not weigh in favor of applying the futility exception. Montvale's assertion that it diligently pursued administrative relief is belied by the record, which shows that it submitted a second appeal to Horizon, in spite of the Plan's plain language directing the appeal be sent to the Fund's Board of Trustees. Montvale also argues that the Fund failed to comply with its own procedures by failing to provide a Summary Plan Description, which Montvale requested of Horizon. The obligation to furnish [*15] a copy of the SPD, however, runs from the plan administrator to the plan participant or beneficiary, upon the latter's written request. *29 U.S.C. § 1024(b)(4)*. Montvale is not the plan participant or beneficiary, and Horizon, to which it directed the request for the SPD, is not the Plan administrator within the meaning of ERISA. As to the remaining factors, Plaintiff provides no evidence to support them. In short, Plaintiff fails to make the required "clear and positive showing" that exhausting the Plan's administrative remedies would have been futile.

Defendants have come forward with evidence demonstrating that Plaintiff did not exhaust the Plan's administrative remedies before filing this lawsuit. The Court finds that Defendants, which bear the burden of proving the affirmative defense of failure to exhaust administrative remedies, have established that, as a matter of law, no reasonable jury could find in Plaintiff's favor on an *ERISA § 502(a)* claim. Plaintiff, in response, has pointed to no genuine issues of fact. Having met their burden under *Rule 56*, Defendants are entitled to summary judgment on the Complaint.

### III. CONCLUSION

For the foregoing reasons, the Court will grant summary [*16] judgment in favor of the Fund and of Horizon. An Order will be filed together with this Opinion.

/s/ Stanley R. Chesler

STANLEY R. CHESLER

United States District Judge

2013 U.S. Dist. LEXIS 15327, *

Dated: February 5, 2013

# EXHIBIT G



ROBERT FLEISHER, D.M.D., Plaintiff, v. STANDARD INSURANCE COMPANY, Defendant.

Civil No. 10-2678 (RBK/KMW)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2011 U.S. Dist. LEXIS 46756

May 2, 2011, Decided
May 2, 2011, Filed

**NOTICE:** NOT FOR PUBLICATION

**SUBSEQUENT HISTORY:** Affirmed by *Fleisher v. Std. Ins. Co., 2012 U.S. App. LEXIS 9907 (3d Cir. N.J., May 17, 2012)*

**COUNSEL:** For ROBERT FLEISHER, D.M.D, Plaintiff: KENNETH J. GRUNFELD, RUBEN HONIK, GOLOMB & HONIK, P.C., PHILADELPHIA, PA; CLIFFORD DAVID SWIFT, III, LAW OFFICES OF MARK F. SELTZER & ASSOCIATES PC, PHILADELPHIA, PA.

For STANDARD INSURANCE COMPANY, Defendant: PETER J. GUFFIN, LEAD ATTORNEY, PIERCE ATWOOD LLP, PORTLAND, ME.

**JUDGES:** [*1] ROBERT B. KUGLER, United States District Judge.

**OPINION BY:** ROBERT B. KUGLER

**OPINION**

(Doc. No. 26)

**KUGLER**, United States District Judge:

This is a disability insurance coverage dispute stemming from an ERISA-governed insurance policy issued by Defendant Standard Insurance Company ("Standard"). Before the Court is Standard's motion to dismiss under *Rule 12(b)(6)*. Plaintiff alleges that Standard improperly reduced his disability benefits by subtracting benefits he received under a separate policy issued by North American Company for Life and Health Insurance ("North American"). Standard claims that the deduction was proper because the Standard policy expressly provides for the subtraction of benefits received under "other group insurance coverage," and the North American policy qualifies as "group insurance." Plaintiff responds that the North American policy is most appropriately characterized as "individual insurance." Plaintiff asserts individual and class claims for wrongful denial of benefits under ERISA. Plaintiff defines the putative class to include other Standard beneficiaries whose benefits Standard reduced by amounts they received under other policies. Because the North American policy bears the characteristics [*2] of a kind of collective insurance called "franchise insurance," and because the phrase "group insurance coverage" can reasonably include franchise insurance, the Court finds no basis to disturb Standard's interpretation or application of the Standard policy. The Court grants Standard's motion to dismiss.

**I. BACKGROUND**

**A. Factual Background**[1]

[1] The facts in this section are taken from Plaintiff's Second Amended Complaint and the attached exhibits. As discussed below, although Plaintiff filed the Second Amended Complaint without obtaining leave of the Court pursuant to *Federal Rule of Civil Procedure 15*, the Court finds that the Second Amended Complaint is properly dismissed on the merits under *Federal Rule of Civil Procedure 12(b)(6)* for failure to state a claim.

Plaintiff is a dentist. While practicing dentistry, Plaintiff obtained long term disability coverage under both the Standard policy and the North American policy. In 2008, Plaintiff became totally disabled and claimed

coverage under both policies. Plaintiff's claims stem from Standard's determination that Plaintiff's benefits under the Standard policy should be reduced by the benefits he received under the North American policy.

The [*3] Standard policy is a group long-term disability policy that Standard issued to Plaintiff's employer, Endodontics, Ltd., P.C. ("Endodontics"). Plaintiff was covered by the Standard policy as a plan participant because he was a member of Endodontics. According to the Standard policy, a plan participant who becomes disabled is entitled to "LTD Benefits according to the terms of the Group Policy." (Pl.'s Second Compl. Ex. 1, at 4). "LTD benefits" are equal to a percentage of the plan participant's pre-disability earnings, "reduced by Deductible Income." (Id. at 2). "Deductible Income" includes "[a]ny amount you receive or are eligible to receive because of your disability under another group insurance coverage." (Id. at 13). The policy does not define "another group insurance coverage." The policy excludes from the definition of "Deductible Income" all "benefits from any individual disability insurance policy," but it does not define "individual disability insurance policy." (Id.).

The Standard policy also provides that Standard has "full and exclusive authority to control and manage the [Standard] Policy, to administer claims, and to interpret the [Standard] Policy and resolve all questions [*4] arising in the administration, interpretation, and application of the [Standard] policy." (Id. at 20). In that regard, Standard's "authority includes, but is not limited to, . . . [t]he right to determine: . . . eligibility for insurance; . . . [e]ntitlement to benefits; . . . [t]he amount of benefits payable; and . . . [t]he sufficiency and the amount of information [Standard] may reasonably require to [make those determinations]." (Id.) (formatting altered).

Plaintiff obtained coverage under the North American policy "through the American Association of Endodontics" (the "AAE"). (Ex. 3, at 1). Plaintiff attaches to the Second Amended Complaint a six-page document entitled "Certificate of Insurance" issued by North American (the "Certificate"). (Second Am. Compl. Ex. 2, at 1). The Certificate provides:

> NORTH AMERICAN COMPANY . .
>
> Having issued group policy PG A320 (herein called Policy) insuring members of the Association [the AAE] . . . .
>
> HEREBY CERTIFIES that the member to whom this Certificate is issued (herein the Insured) is insured under and subject to all the provisions, definitions, limitations and conditions of said policy .
> . . as to injury and sickness as defined herein, provided [*5] such member is . .
> . on active, full-time duty . . .

(Id. at 1). The Certificate includes multiple other references to the interplay between "the policy" and "this Certificate." (See id. at 1, 5, 7). The Certificate also provides: "The policy is in possession of the Holder and may be inspected by the Insured at any time during business hours at the office of the Holder." (Id. at 8).

Plaintiff's disability entitles him to receive $10,000 a month under the Standard policy and $1,500 a month under the North American policy. However, Standard determined that Plaintiff's proceeds under the North American policy were "group insurance coverage," and therefore deductable from his "LTD Benefits" under the Standard policy. Thus, Standard pays Plaintiff only $8,500 per month in benefits under the Standard policy.

Plaintiff contested Standard's determination that the Certificate is "group insurance coverage." In support of his position, Plaintiff obtained a letter from North American stating:

> As we previously explained, please understand that that [sic] Dr. Fleisher's North American Company policy . . . was issued through the American Association of Endodontics. Even though this policy was issued [*6] through this group, it is an individual disability income policy and we are treating all aspects of Dr. Fleisher's claim as an individual disability income policy.

(Second Am. Compl. Ex. 3). Plaintiff also alleges that "[a]ll insurance policies issued through professional associations are individual disability insurance policies." (Second Am. Compl. ¶ 7). Plaintiff does not cite the basis for this categorical statement. He insists, however, that "in terms of classifying policies as 'individual' in nature, all professional association disability insurance policies contain materially identical characteristics . . . [, and] the existence of these characteristics makes them inherently and uniformly 'individual' in nature." (Id. ¶¶ 9-10).

In that regard, Plaintiff claims that the North American policy is an individual rather than group policy because: (1) it was individually underwritten for Plaintiff; (2) Plaintiff paid the premiums directly; (3) Plaintiff "enrolled directly"; (4) Plaintiff submits claims directly to North American; (5) North American issues Plaintiff individual billing statements; and (6) the policy auto-

Case 2:12-cv-05210-CCC-JAD   Document 20-6   Filed 04/29/13   Page 10 of 16 PageID: 199

Page 3
2011 U.S. Dist. LEXIS 46756, *

matically renews at the end of each term. (Id.). According to Plaintiff, [*7] those features establish that the North American policy is not "group coverage" within the meaning of the Standard policy, and, therefore, Standard is not authorized to deduct benefits under the North American policy from benefits due under the Standard policy.

### B. Procedural History

Plaintiff filed the Complaint in May 2010. The Complaint asserted claims for breach of contract, violations of the New Jersey Consumer Fraud Act, breach of fiduciary duty under ERISA, and unjust enrichment. Plaintiff asserted each claim on behalf of himself and a putative class. Plaintiff defined the putative class as including two subclasses:

> a. Those Members who are currently disabled and whose benefits from The Standard are reduced by benefits from a professional association policy,
>
> b. Those members who have not yet manifested an entitlement to benefits under their policies issued by The Standard because they are not presently disabled.

(Compl. ¶ 30). Standard did not answer the Complaint but timely moved to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, (Doc. No. 11). Standard argued that ERISA preempts Plaintiff's state law claims for breach of contract, violations of the New Jersey Consumer [*8] Fraud Act, and unjust enrichment. Standard also argued that Plaintiff failed to state a claim under ERISA.

Plaintiff did not oppose Standard's motion to dismiss but made a motion to amend the Complaint, which the Court granted. The Amended Complaint included only claims for breach of fiduciary duty and breach of contract under ERISA. The Amended Complaint asserts both claims on behalf of Plaintiff and the same putative class defined in the original Complaint. Standard did not answer Plaintiff's Amended Complaint but timely moved to dismiss pursuant to *Rule 12(b)(6)*. (Doc. No. 23). Standard argued that Plaintiff could not, as a matter of law, assert a claim for breach of fiduciary duty under *ERISA § 502(a)(1)(B)* or *§ 502(a)(3)*. Standard also argued that Plaintiff failed to state a claim for recovery of benefits under an ERISA-governed plan.

Plaintiff did not oppose Standard's motion to dismiss the Amended Complaint. Rather, without leave of the Court, Plaintiff purported to file a Second Amended Complaint. The Second Amended Complaint asserts claims for: (1) breach of fiduciary duty pursuant to *ERISA § 502(a)(3)* (Count I); (2) breach of contract pursuant to *ERISA § 502(a)(1)(B)* (Count [*9] II); and (3) breach of contract pursuant to *ERISA § 502(a)(3)* (Count III). Plaintiff asserts all three claims on behalf of himself and the same putative class.

Standard now moves to dismiss the Second Amended Complaint. (Doc. No. 26). Standard argues that the Second Amended Complaint should be dismissed because Plaintiff violated *Rule 15* by filing it without first obtaining leave from the Court. Standard also argues that the Second Amended Complaint should be dismissed under *Rule 12(b)(6)* for failure to state a claim. Standard argues that Counts I and III of the Second Amended Complaint fail because a plaintiff may bring a claim under *ERISA § 502(a)(3)* only if the requested relief is unavailable under any other ERISA provision. Standard argues that Count II should be dismissed because Plaintiff's allegations, even if accepted as true, do not establish that Standard's reduction of Plaintiff's benefits was arbitrary or capricious.

Plaintiff opposes Standard's motion to dismiss the Second Amended Complaint. He argues that *Rule 15*'s standard for amendment is satisfied. He also argues that he may plead claims under *ERISA § 502(a)(3)* and *§ 502(a)(1)(B)* in the alternative and that his factual [*10] allegations establish that Standard arbitrarily denied him benefits. Plaintiff further claims that the Court must review Standard's reduction of benefits de novo because that decision was based on Standard's interpretation of the North American policy, which is a nonplan document.

### II. LEGAL STANDARD

Under *Federal Rule of Civil Procedure 12(b)(6)*, a court may dismiss an action for failure to state a claim upon which relief can be granted. With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)* (quoting *Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008))*. In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. In addition to the allegations of the complaint, a court may consider matters of public record, documents specifically referenced in or attached [*11] to the complaint, and documents integral to the allegations raised in the complaint. *Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 255 n. 5 (3d Cir. 2004)*.

In making that determination, a court must conduct a two-part analysis. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009); *Fowler*, 578 F.3d at 210-11. First, the court must separate factual allegations from legal conclusions. *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." *Id. at 1950*. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. See id.

## III. DISCUSSION

### A. Plaintiff's ERISA Claim under § 502(a)(1)(B)

Count II of the Second Amended Complaint asserts a claim for "breach of contract" under *ERISA § 502(a)(1)(B)*, 29 U.S.C. § 1132(a)(1)(B). Plaintiff alleges that Standard "breached its obligations [*12] under ERISA to [Plaintiff] and all Members of the Class by taking a deduction to which it was not entitled and thus unreasonably failing to pay those benefits in full to them." (Second Am. Compl. ¶ 66).

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines*, 463 U.S. 85, 90, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983). "An 'employee welfare benefit plan' includes any program that provides benefits for contingencies such as illness, accident, disability, death, or unemployment." *Id. at 91 n.5* (citing *29 U.S.C. § 1002(1)*). ERISA does not mandate that employers provide any particular benefits, but it "sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for" employee benefit plans. *Id. at 91* (citing *29 U.S.C. §§ 1021-31, 1101-14*).

In order to facilitate those objectives, *§ 502(a)(1)(B)* creates a civil cause of action for a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *29 U.S.C. § 1132(a)(1)(B)*. A claim under *§ 502(a)(1)(B)* [*13] generally involves a suit by a plan beneficiary against the plan administrator for failure to properly administer the plan. See, e.g., *Zebrowski v. Evonik Degussa Corp. Admin. Comm.*, No. 10-542, 2011 U.S. Dist. LEXIS 18596 (E.D. Pa. Feb. 23, 2011). To assert a claim under *§ 502(a)(1)(B)*, a plaintiff must demonstrate that "he or she [has] a right to benefits that is legally enforceable against the plan" and that the plan administrator improperly denied him or her those benefits. *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006).

The parties do not dispute that the Standard policy is an "employee welfare benefit plan" governed by ERISA. See *29 U. S. C. § 1002(1)* (defining "employee welfare benefit plan"). Rather, they dispute whether the Standard policy permits Standard to reduce Plaintiff's benefits by amounts he receives under the North American policy. The parties dispute both the proper standard to be applied in reviewing Standard's reduction of benefits, as well as the outcome under the appropriate standard.

### 1. Standard of Review

Plaintiff argues that a plan administrator is entitled to the deferential "arbitrary and capricious" standard of review only if the administrator [*14] is interpreting documents that are part of the governing plan. (Pl.'s Br. in Opp. to Def.'s M. to Dismiss, at 11). According to Plaintiff, "if the administrator is interpreting documents that are not part of the coverage plan, a de novo review applies." (Id. at 11). Plaintiff claims that in this case de novo review applies because Standard's denial of benefits was based on its interpretation of the North American policy, which is a nonplan document. Standard responds that if a plan grants the administrator discretion to both interpret the underlying plan and make factual determinations regarding administration of benefits, then the arbitrary-and-capricious standard of review applies to an administrator's findings regarding documents that are not part of the underlying plan.

"In Firestone Tire & Rubber Co. v. Bruch, the Supreme Court held that, when analyzing a challenge to a denial of benefits in these actions, a court must review the plan administrator's decision under a de novo standard of review unless the plan grants discretionary authority to the administrator to determine eligibility for benefits or interpret terms under the plan." *Saltzman v. Independence Blue Cross*, 384 F. App'x. 107, 111 (3d Cir. 2010) [*15] (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989)). Thus, the Third Circuit has held that the appropriate standard of review depends on the discretion granted to the administrator under the terms of the ERISA-governed plan. *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 438 (3d Cir. 1997), abrogated on other grounds as stated in *Miller v. Am. Airlines, Inc.*, No. 10-1784, 632 F.3d 837, 2011 U.S. App. LEXIS 1462, at *19-20 (3d Cir. Jan. 25, 2011) (citing *Firestone*, 489 U.S. at 109). If the plan grants the administrator discretion "to construe the terms of the plan," the court "applies an arbitrary and capricious standard of review" regarding interpretation of the plan. *Saltzman*, 384 F. App'x. at 111 (citing *Gritzer v. CBS, Inc.*, 275 F.3d 291, 295 (3d Cir.

2002)). Similarly, if the plan grants the administrator "the discretion to act as a finder of facts," then the court will also apply the arbitrary and capricious standard of review to factual determinations. *Mitchell, 113 F.3d at 438*; see *Anderson v. Bakery & Confectionery Union & Indus. Int'l Pension Fund, 654 F. Supp. 2d 267, 279 (E.D. Pa. 2009)* (finding that factual determinations were subject to arbitrary and capricious standard [*16] of review).

In Mitchell, the plan vested the administrator with the following authority: "In reviewing the claim of any participant, the Plan Administrator shall have full discretionary authority to determine all questions arising in the administration, interpretation and application of the plan." Id. The Third Circuit held that, "giving this language its ordinary meaning, we conclude that the broad grant of discretionary authority to the Administrator is sufficient to preclude de novo review of both interpretative and factual determinations made in the course of applying the benefit provisions of the Plan to a particular application for benefits." Id. The Third Circuit reasoned that granting the administrator the authority to "apply" the plan, gave the administrator the authority to resolve factual disputes necessary to determine benefit eligibility under the plan. *Id. at 439* ("'application' of the Plan, like 'application' of the law, must encompass the resolution of factual disputes as well as the interpretation of the governing provisions of the plan."). Thus, the Third Circuit applied the deferential abuse-of-discretion standard [2] to the plan administrator's interpretation of the [*17] plan's terms as well as the administrator's use and interpretation of nonplan documents. *Id. at 440-43*; *Anderson, 654 F. Supp. 2d at 279* ("the Mitchell court reviewed the administrator's decision to deny the plaintiff benefits -- a decision the administrator had reached on a record of evidence containing medical (non-plan) documentation -- under the deferential arbitrary and capricious standard.").

> 2  According to the Third Circuit: "Our prior caselaw referenced an 'arbitrary and capricious' standard of review, while [the Supreme Court in *Metro Life Ins. Co. v. Glenn, 554 U.S. 105, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008)*], describes the standard as 'abuse of discretion.' We have recognized that, at least in the ERISA context, these standards of review are practically identical." *Estate of Schwing v. Lilly Health Plan, 562 F.3d 522, 526 n.2 (3d Cir. 2009)* (citing *Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 n.4 (3d Cir. 1993)*).

Like the plan at issue in Mitchell, the Standard policy gives the administrator discretionary authority over the policy's "application." Indeed, the Standard policy vests the administrator with the "full and exclusive authority" to "interpret the [Standard] Policy and resolve all questions arising [*18] in the administration, interpretation, and application of the [Standard] Policy." (Second Am. Compl. Ex. 1, at 20) (emphasis added). Thus, as in Mitchell, the Standard policy gives Standard the authority to interpret the plan and make findings of fact necessary to determine benefit eligibility. See *Mitchell, 113 F.3d at 439*; see also *Anderson, 654 F. Supp. 2d at 279* (holding that plan language giving administrator the "exclusive right to administer, apply, and interpret the Plan" gave the administrator the discretion to make necessary factual determinations). The Court must therefore review Standard's benefit determination under the deferential abuse-of-discretion standard. This includes Standard's interpretation and characterization of the North American policy. See *Anderson, 654 F. Supp. 2d at 279* (holding that plan administrator's interpretation of a settlement agreement for purposes of determining eligibility for pension benefits was a factual determination entitled to deference under the abuse-of-discretion standard).

### 2. Denial of Full Benefits under the Standard Policy

"Under the arbitrary and capricious (or abuse of discretion) standard of review, the district court may overturn [*19] a decision of the Plan administrator only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)* (quoting *Adamo v. Anchor Hocking Corp., 720 F. Supp. 491, 500 (W.D. Pa. 1989)*). "This scope of review is narrow, and the court is not free to substitute its own judgment for that of the defendants [sic] in determining eligibility for plan benefits." Id.

Regarding interpretation of plan terms, an administrator's interpretation is "not arbitrary" if it is "reasonably consistent with unambiguous plan language." [3] *Bill Gray Enters. v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001)*. Even if plan language is ambiguous, the court must defer to the administrator's interpretation unless it is arbitrary and capricious. *McElroy v. SmithKline Beecham Health & Welfare Benefits Trust Plan, 340 F.3d 139, 143 (3d Cir. 2003)*. Similarly, an administrator's factual determinations are based on "substantial evidence" if they are supported by "more than a mere scintilla." *Kowalchick v. Director, OWCP, 893 F.2d 615, 619 (3d Cir. 1990)*. "Substantial evidence" is "such relevant evidence as a reasonable mind might [*20] accept as adequate to support a conclusion." *Soubik v. Director, OWCP, 366 F.3d 226, 233 (3d Cir. 2004)*. When reviewing an administrator's factual determinations, the court looks only to the "evidence that was before the administrator when he made the decision being reviewed." *Mitchell, 113 F.3d at 440*.

3   The Court notes that there is some uncertainty in the Third Circuit regarding the appropriate standard of review when the plan language is unambiguous. In *Lasser v. Reliance Std. Life Ins. Co.*, 344 F.3d 381, 386 (3d Cir. 2003), the Third Circuit stated: "We recognize that, if the meaning of [the plan term] is ambiguous, [the administrator's] definition is entitled to deference under the applicable arbitrary and capricious standard." See *Skretvedt v. E.I. DuPont de Nemours & Co.*, 268 F.3d 167, 177 (3d. Cir. 2001) ("[the administrator's] interpretation of [the plan] is entitled to deference under the arbitrary and capricious standard, unless it is contrary to the plain language of the plan."). This language suggests that the arbitrary-and-capricious standard of review is appropriate only if the language of the plan is ambiguous. However, "the Supreme Court in Firestone mandated the 'arbitrary [*21] and capricious' standard of review, without reference to whether a policy term was ambiguous." *Weiss v. Prudential Ins. Co. of Am.*, 497 F. Supp. 2d 606, 611 (D.N.J. 2007). Thus, some district courts in this Circuit have departed from Lasser and Skretvedt and applied the arbitrary and capricious standard without regard to whether the disputed term was ambiguous. See, e.g., *id. at 613*. Here, because the Court determines that the phrase "another group insurance coverage" is ambiguous, the arbitrary and capricious standard applies in any event.

Notwithstanding this deferential standard, the Supreme Court has held that if a plan administrator performs the dual role of determining benefit eligibility and paying benefits, a conflict of interest exists that a court must consider when reviewing determinations by plan administrators. *Firestone*, 489 U.S. at 115 ("if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion'") (quoting *Restatement (Second) of Trusts § 187, cmt. d* (1959)). [4] However, a conflict of interest is only one factor to [*22] consider when evaluating the lawfulness of a plan administrator's determinations. See *Glenn*, 554 U.S. at 117 ("Firestone means what the word 'factor' implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one."). In Glenn, the Supreme Court further explained that a conflict of interest may operate as a "tiebreaker" in cases where the balancing of other factors leads to a close call. *Glenn*, 554 U.S. at 117.

4   In *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105, 115, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008), the Supreme Court clarified its holding in Firestone by explaining that a conflict of interest does not result in "a change in the standard of review." (emphasis in original). Metro Life abrogated a line of Third Circuit cases interpreting Firestone to require a "'sliding scale' standard of review where the level of conflict would influence the intensity of arbitrary and capricious review." *Miller v. Am. Airlines, Inc.*, No. 10-1784, 632 F.3d 837, 2011 U.S. App. LEXIS 1462, at *13-14 n.3 (3d Cir. Jan. 25, 2011) (explaining Glenn's impact on Third Circuit precedent applying Firestone). The Third Circuit now applies "a [*23] deferential abuse of discretion standard of review across the board and consider[s] any conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion." *Schwing*, 562 F.3d at 525.

Here, the first factor to consider is the relevant language in the Standard policy. The policy excludes as deductible income all proceeds paid "under another group insurance coverage." Unfortunately, that phrase does not provide much clarity because the term "group insurance" is ambiguous. In its most general sense, the term is used "whenever a master policy was issued to a person or entity, including associations, with individual certificates then being issued to those whose lives or well-being are the subject of insurance." Holmes' Appleman on Insurance § 2.5 (2d ed. 2002) (emphasis added); see *Hall v. Life Ins. Co. of N. Am.*, 317 F.3d 773, 775-76 (7th Cir. 2003); Couch on Insurance § 1:29 (3d ed. 2002). However, insurers have developed at least two subsets of collective insurance products: "true group insurance" and "franchise insurance." See Appleman on Insurance Law & Practice § 54 (rev. ed. 1981). "Group insurance is an arrangement by which [*24] a single insurance policy is issued to a central entity--commonly an employer, association, or union--for coverage of the individual members of the group. Franchise insurance is a variation on group insurance, in which all members of the group receive individual policies." Couch on Insurance § 1:29 (3d ed. 2002).

True group insurance generally has the following characteristics: (1) "there is a close relationship between the certificate holder and the holder of the master policy -- usually, but not always, that of employment;" (2) all employee or members are automatically enrolled by virtue of their employment or membership; (3) the "master policy holder" is responsible for notifying the insurer of the persons covered by the policy at any particular time; (3) the "master policy insured" is responsible to the insurer for paying premiums, whether on a contributory or noncontributory basis; and (4) the "master policy insured" is responsible for processing claims by employees

or members. Appleman on Insurance Law & Practice §§ 41, 54 (rev. ed. 1981).

Franchise insurance is a kind of collective insurance where the governing entity or association "grants a franchise to the insurer to solicit its [*25] members, or other personnel, and places a qualified stamp of approval" on a general policy offered by the insurer to the members. Appleman on Insurance Law & Practice § 54 (rev. ed. 1981). Although "the holder of the master policy and insurer may negotiate" to modify or terminate the plan, in all other respects the relationship between members and the insurer is "precisely that of an insurer dealing directly with its policyholders." Id. ("each insured has independent rights against the insurer which are exactly the same as if there were no other contracts existing between such company and the organization or other members"); see *Daniels v. Nat'l Home Life Assurance Co., 103 Nev. 674, 747 P.2d 897 (Nev. 1987)* (finding that franchise insurance policy was best characterized as an individual rather than group policy for purposes of Nevada insurance statute). Thus, franchise insurance generally has the following characteristics: (1) members of the relevant association or entity may enroll in the plan but are not required to do so; (2) members pay premiums directly to the insurer; (3) members make claims directly to the insurer; and (4) insurers agree to "waive underwriting, and take all applicants across [*26] the board." Appleman on Insurance Law & Practice § 54 (rev. ed. 1981).

Although true group insurance and franchise insurance are distinct products, "lawyers, legal writers, publishers, and the courts" can refer to them individually and collectively as "group insurance." Holmes' Appleman on Insurance § 2.5 (2d ed. 2002) (criticizing this practice and arguing that it is inaccurate to refer to franchise insurance as group insurance); see *Hall, 317 F.3d at 775-76* (noting that franchise insurance is "group insurance" in the sense that it involves the purchase of insurance coverage through a collectively negotiated plan). Thus, the phrase "group insurance," standing alone begs the question of whether the phrase refers to true group insurance, franchise insurance, or both. See *Hall, 317 F.3d at 776* (holding that a policy that allowed for deduction of proceeds from "group insurance" resolved this ambiguity because it also specifically included "franchise insurance" in the list of deductibles). In other words, the term is ambiguous because it may reasonably refer to at least two different types of collective insurance products.

Thus, the Court must decide whether, in light of the term's inherent [*27] ambiguity, Standard's determination that the North American policy did not qualify as "group insurance" was an unreasonable interpretation. Plaintiff argues that Standard's determination was unreasonable because the North American policy bears certain features characteristic of individual insurance policies. Specifically, Plaintiff alleges that: (1) North American individually underwrote the policy for Plaintiff; (2) Plaintiff paid premiums directly to North American; (3) Plaintiff "enrolled directly"; (4) Plaintiff submits claims directly to North American; (5) North American issues Plaintiff individual billing statements; and (6) the policy automatically renews at the end of each term. Plaintiff therefore concludes that the North American policy is a pure individual policy.

However, Plaintiff does not deny that the North American policy was issued through the AAE. Indeed, the Certificate, which Plaintiff attaches to the Complaint, clearly states that it is issued pursuant and subject to "group policy PG A320," which is held by AAE, and that Plaintiff obtained the Certificate as a member of the AAE. Thus, even if all of Plaintiff's allegations are accepted as true, and even if the [*28] record before the administrator included all of those facts, the North American policy is reasonably characterized as a franchise policy because it was issued through a group, whose members could individually apply for coverage, and the members otherwise interacted directly with the North American regarding coverage and premiums.

This conclusion is further supported by the fact that the Standard policy explicitly exempts from deductible income any proceeds received under "any individual disability insurance policy." Even if Plaintiff's allegations are accepted as true, the North American policy is certainly not a pure individual policy because it plainly states that it was issued pursuant to a group policy held by AAE. Moreover, North American itself admits that the policy "was issued through this group [the AAE]." Thus, it was not unreasonable for Standard to conclude that the North American policy was not an "individual policy" exempt from deduction but was "group insurance coverage" subject to deduction. Cf. *Gutta v. Std. Select Trust Ins. Plans, 530 F.3d 614 (7th Cir. 2008)* (holding that the phrase "group insurance coverage" did not include a policy that was expressly issued pursuant [*29] to a group policy held by a professional association notwithstanding that the policy had some attributes of individual insurance).

Plaintiff nevertheless contends that an insurance policy that bears some characteristics of an individual policy cannot reasonably be describes as "group insurance coverage." The Court disagrees. As discussed above, the phrase "group insurance," standing alone, has various possible referents. The term may be used to refer to circumstances where "a master policy was issued to a person or entity, including associations, with individual certificates then being issued to those whose lives or well-being are the subject of insurance." Holmes' Appleman on Insurance § 2.5 (2d ed. 2002) (emphasis add-

ed). If the term is used in that very general sense, it incorporates both true group insurance and franchise insurance. Id.; *Hall, 317 F.3d at 775-76*. Both of those referents are reasonably within the term's semantic range. Thus, even if Plaintiff's allegations are accepted as true, and the North American policy is not "true group insurance" but franchise insurance, it was not unreasonable for Standard to conclude that the unqualified phrase "group insurance coverage" [*30] included the North American policy. [5]

> 5   The Standard policy includes as deductable income benefits received under "another group insurance coverage." It could be argued that the word "another" qualifies the phrase "group insurance coverage" by limiting it to only those kinds of group policies that are similar to the Standard policy itself. The Court rejects this argument. Inserting the word "another" before the phrase "group insurance coverage" does not require the conclusion that "group insurance coverage" is limited to only policies that are similar to the Standard policy. Moreover, even if the word "another" has some qualifying affect, it provides no indication as to which attributes of the Standard policy are intended to be excluded from the meaning of "group insurance coverage." Thus, notwithstanding the word "another," Standard was not unreasonable in determining that the North American policy, which bears some group characteristics, was within the meaning of "group insurance coverage."

Moreover, this is not so close a case that any conflict of interest would break the tie and tip the scales in favor of Plaintiff. [6] See *Schwing, 562 F.3d at 526* (denying beneficiary's challenge of [*31] administrator's determination notwithstanding a conflict of interest because "there was an abundance of evidence . . . to support the denial of his claim and a lack of evidence to support his theory of pretext"); *Wakkinen v. UNUM Life Ins. Co. of Am., 531 F.3d 575, 582 (8th Cir. 2008)* ("Taking into account the remaining factors discussed below, we conclude that there is not a sufficiently close balance for the conflict of interest to act as a tiebreaker in favor of finding that [the administrator] abused its discretion"). Plaintiff offers no support for the proposition that it is unreasonable to interpret the phrase "group insurance coverage" to include franchise insurance policies. The available authority supports the conclusion that the phrase can be can be used broadly to include franchise insurance. [7] Thus, notwithstanding a potential conflict of interest, the reasonableness of Standard's determination is not seriously in question.

> 6   Plaintiff alleges facts sufficient to establish a conflict of interest. Plaintiff alleges that Defendant "marketed, sold, managed, and administered" the Standard Policy. (Second Am. Compl. ¶ 19). Plaintiff further alleges that "Standard considered [the [*32] North American Policy], and all disability insurance policies issued through professional associations, as 'group' policies so it could take the benefits received from the [North American Policy] as a set off from the benefits received from the Standard Policy, thus reducing its financial obligation to [Plaintiff] and those similarly situated, and increase its own bottom line profitability." (Second Am. Compl.¶ 45).
>
> 7   Some courts have held that, for regulatory purposes, franchise insurance is more analogous to individual insurance than true group insurance. See *Daniels, 103 Nev. 674, 747 P.2d 897, 900 (Nev. 1987)* (finding that franchise insurance policy was best characterized as an individual rather than group policy for purposes of Nevada insurance statute); *Wood v. New York Life Ins. Co., 255 Ga. 300, 336 S.E.2d 806 (Ga. 1985)* (same regarding Georgia's insurance statute). Those cases do no undermine the Court's conclusion that the bald phrase "group insurance" can reasonably include franchise insurance.

The Court therefore grants Standard's motion to dismiss Plaintiff's ERISA claim under *§ 502(a)(1)(B)* because even if Plaintiff's allegations are accepted as true, Standard's decision to deduct proceeds from the [*33] North American policy was not an unreasonable interpretation and application of the Standard policy.

### B. Plaintiff's ERISA Claims under § 502(a)(3)

Plaintiff asserts claims for breach of fiduciary duty and breach of contract under *ERISA § 502(a)(3)* (Counts I and III respectively). Under *ERISA § 502(a)(3)*, a participant or beneficiary of an ERISA-governed plan can sue: "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." *29 U.S.C. § 1132(a)(3)*. Plaintiff's claim for breach of fiduciary duty is apparently predicated on *§ 404 of ERISA*, "which defines fiduciary duties owed by plan administrators to their beneficiaries." *Harte v. Bethlehem Steel Corp., 214 F.3d 446, 451 (3d Cir. 2000)* (citing § 404 codified at *29 U.S.C. § 1104*).

The sole basis for Plaintiff's claims under *ERISA § 502(a)(3)* is that Standard improperly deducted his North American policy benefits from proceeds due under the Standard policy. According to Plaintiff, Standard's im-

proper deduction amounts to a breach of its fiduciary [*34] duties under ERISA and a breach of the terms of the Standard policy. Plaintiff does not allege that Standard engaged in any other independent misconduct amounting to a breach of its fiduciary duties or a breach of the plan's terms. However, as discussed above, Standard's determination that proceeds from the North American policy should be deducted from proceeds due under the Standard policy was not an unreasonable interpretation or application of the Standard policy. Because Standard's determination was reasonable in light of the policy's language, Plaintiff fails to state a claim for breach of fiduciary duty or breach of the Standard policy under *§ 502(a)(3)*. [8] See *Zurawel, 2010 U.S. Dist. LEXIS 102085, at \*60* (dismissing claim under *§ 502(a)(3)* because court found that administrator's conduct was not improper under *§ 502(a)(1)(B)*).

> 8   Standard also argues that Plaintiff's § 502(a)(3) claims are barred under *Varity Corp. v. Howe, 516 U.S. 489, 512, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996)*, which held that *§ 502(a)(3)* is a "catchall" provision which "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that *§ 502* does not elsewhere adequately remedy." According to Standard, Varity [*35] stands for the proposition that a plaintiff may not bring a *§ 502(a)(3)* unless the plaintiff may not obtain the requested relief by asserting a claim under *§ 502(a)(1)(B)*. Plaintiff responds by citing various cases permitting plaintiffs to pursue both § 502(a)(1)(B) and § 502(a)(3) claims. See, e.g., *Moore v. First Union Corp., 00-2512, 2000 U.S. Dist. LEXIS 10730, at \*2 (E.D. Pa. July 24, 2000)* ("As was recently noted by this Court, Varity does not propose a bright-line rule that a claim for equitable relief under *§ 1132(a)(3)* should be dismissed when a plaintiff also brings a claim under *§ 1132(a)(1)(B)*."); *Crummett v. Metro. Life Ins. Co., No. 06-1450, 2007 U.S. Dist. LEXIS 50956, at \*8 (D.D.C. July 16, 2007)*. Because the Court finds that Plaintiff's § 502(a)(3) claims fail on the merits, the Court need not address this argument by Standard.
>
> Moreover, the Court notes that the residual or "catchall" nature of *§ 502(a)(3)* does not imply that a plaintiff has a claim under *§ 502(a)(3)* whenever his claim fails under *§ 502(a)(1)(B)*. See *Zurawel v. Long Term Disability Income Plan for Choices Eligible Emp. of Johnson & Johnson, No. 07-5972, 2010 U.S. Dist. LEXIS 102085, at \*60 (D.N.J. Sept. 27, 2010)* [*36] (dismissing § 502(a)(3) and § 502(a)(1)(B) claim because the plan administrator did not act improperly). *Section 502(a)(3)* is principally concerned with ensuring that plaintiffs can obtain appropriate equitable relief for ERISA violations that cause injuries that are not otherwise redressable under ERISA's civil claim provision. See *Varity Corp, 516 U.S. at 512*. If, as in this case, the sole basis for the plaintiff's § 502(a)(3) claims is that the administrator denied benefits in an arbitrary manner, the standard for reviewing the administrator's decision is the same as the standard for reviewing denial of benefits under *§ 502(a)(1)(B)*. And, if the administrator discharges his fiduciary duties by applying the plan pursuant to its terms, then there is no underlying ERISA violation upon which to base either a § 502(a)(3) or § 502(a)(1)(B) claim for equitable relief. See *Zurawel, 2010 U.S. Dist. LEXIS 102085, at \*60*.

### C. Leave to Amend Pursuant to Rule 15

Standard also argues that Plaintiff's Second Amended Complaint should be dismissed because Plaintiff filed the Complaint without obtaining leave of the Court. Because the Court determines that the Second Amended Complaint should be dismissed [*37] on the merits for failure to state a claim pursuant to *Rule 12(b)(6)*, the Court does not address Standard's alternative procedural argument that it should be dismissed for failure to obtain leave of the Court pursuant to *Rule 15*. However, counsel for Plaintiff would be well served to take heed of both the Federal Rules of Civil Procedure and the Local Civil Rules before making any future filings in this Court.

### IV. CONCLUSION

For the reasons discussed above, the Court grants Standard's motion to dismiss the Second Amended Complaint for failure to state a claim pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. An appropriate Order shall enter.

Dated: 5/2/2011

/s/ Robert B. Kugler

ROBERT B. KUGLER

United States District Judge